# Supreme Court of Florida

————————

No. SC16-1712

————————

**ROBIN EUSTACHE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[July 12, 2018]

LAWSON, J.

This case is before the Court for review of the decision of the Fourth District

Court of Appeal in *Eustache v. State*, 199 So. 3d 484 (Fla. 4th DCA 2016), which

certified the following question to be of great public importance:

> WHERE A DEFENDANT IS INITIALLY SENTENCED TO
> PROBATION OR COMMUNITY CONTROL AS A YOUTHFUL
> OFFENDER, AND THE TRIAL COURT LATER REVOKES
> SUPERVISION FOR A SUBSTANTIVE VIOLATION AND
> IMPOSES A SENTENCE ABOVE THE YOUTHFUL OFFENDER
> CAP UNDER SECTIONS 958.14 AND 948.06(2), FLORIDA
> STATUTES, IS THE COURT REQUIRED TO IMPOSE A
> MINIMUM MANDATORY SENTENCE THAT WOULD HAVE
> ORIGINALLY APPLIED TO THE OFFENSE?

*Eustache*, 199 So. 3d at 490. We answer the certified question in the affirmative.

The Fourth District also certified conflict with *Christian v. State*, 84 So. 3d 437

(Fla. 5th DCA 2012), on the same issue.  We disapprove *Christian* to the extent it holds that a minimum mandatory sentence cannot be imposed on a defendant who substantively violates youthful offender supervision.

For the reasons that follow, we hold that upon revocation of a youthful offender's probation for a substantive violation, the trial court is authorized to either impose another youthful offender sentence, with no minimum mandatory, or to impose an adult Criminal Punishment Code (CPC)[1] sentence, which would require imposition of any minimum mandatory term of incarceration associated with the offense of conviction.  Because the trial judge in this case was convinced by the parties that he lacked the discretion to reimpose a youthful offender sentence, Eustache is entitled to a new sentencing proceeding.  Because the Fourth District affirmed the sentence, we quash the decision below and remand for further proceedings consistent with this opinion.

We have jurisdiction.  *See* art. V, § 3(b)(3), (4), Fla. Const.

## BACKGROUND

Eighteen-year-old Robin Eustache entered a guilty plea to robbery with a firearm, which carries a ten-year minimum mandatory sentence.  *Eustache*, 199 So. 3d at 486.  The trial court, however, sentenced him as a youthful offender under the Florida Youthful Offender Act (Act) to four years in prison and two years of

---

1.  *See* Ch. 921, Fla. Stat. (2015).

- 2 -

probation.  *Id.*  The Act, codified at sections 958.011-958.15, Florida Statutes (2005), provides an alternate sentencing scheme for use by judges when sentencing defendants between the ages of eighteen and twenty-one.  Youthful offender sentencing is discretionary, but if the trial judge elects to impose a youthful offender sentence, minimum mandatory terms otherwise associated with the offense of conviction do not apply, and the sentence is capped at six years or the maximum sentence for the crime(s), whichever is least.  § 958.04(1)-(2), Fla. Stat. (2005).[2]  Defendants sentenced under the Act are classified as "youthful offenders" and provided with multiple benefits, including placement in institutions separate from the adult prison population, special rehabilitation programs, and the possibility of early release upon recommendation by the Department of Corrections.  §§ 958.03(5), 958.04(2)(d), Fla. Stat.

After serving the prison portion of his sentence, Eustache violated his probation by committing two new drug offenses, and entered a plea admitting the violation.  *Eustache*, 199 So. 3d at 486.  The trial court found Eustache guilty of the probation violation, revoked his probation, and sentenced him on the underlying offense of robbery with a firearm to fifteen years in prison with a ten-year minimum mandatory sentence.  *Id.*  Eustache did not file a direct appeal.

---

2.  While the 2005 version of the Youthful Offender Act applies to Eustache, there is no substantive difference between that version and the current 2017 version.

Eustache filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, arguing that his counsel at sentencing was ineffective for not advising him that he was subject to the minimum mandatory sentence. *Id.* After the trial court agreed and granted the motion, Eustache withdrew his initial plea and entered an open plea to the violation of probation. *Id.* Both parties advised the trial court at sentencing that if it chose to revoke Eustache's probation, it was required to impose at least the ten-year minimum mandatory sentence and had no ability to avoid the minimum mandatory even by imposing another sentence within the cap, which the trial judge accepted as true. *Id.* at 486, 490. The trial court revoked Eustache's probation and sentenced him to fifteen years in prison, applying the ten-year minimum mandatory sentence. *Id.* at 486.

Eustache then filed a second rule 3.850 motion, arguing that his sentence is illegal either because the trial court wrongly believed it was required to impose the minimum mandatory sentence or because the trial court should not have imposed the minimum mandatory sentence at all. *Id.* The State's response contended that once the trial court exercised its discretion to revoke probation and impose a sentence above the youthful offender cap, it was required to impose the minimum mandatory sentence enhancement. *Id.* After the trial court summarily denied the motion, adopting the State's reasoning, Eustache appealed to the Fourth District. *Id.*

- 4 -

On appeal, the Fourth District affirmed Eustache's fifteen-year sentence and application of the adult minimum mandatory sentence enhancement, holding that under the Act, a trial court, after revoking youthful offender supervision and choosing not to impose a sentence within the youthful offender cap for a substantive violator's underlying offense, must impose any minimum mandatory sentence required for adult offenders charged with the same offense. *Id.* at 489-90. In so holding, the district court relied on the Second District's decision in *Yegge v. State*, 186 So. 3d 553, 556-57 (Fla. 2d DCA 2015) (upholding application of minimum mandatory sentence enhancements to a youthful offender's sentence following a substantive probation violation), as well as its own decision in *Goldwire v. State*, 73 So. 3d 844, 846 (Fla. 4th DCA 2011) (holding that it is within the court's discretion to revoke youthful offender status and apply minimum mandatory sentence enhancements). *Id.* The district court receded from its statement in *Blacker v. State*, 49 So. 3d 785, 789 (Fla. 4th DCA 2010), that minimum mandatory penalties cannot be imposed even after a youthful offender substantively violates supervision, certified direct conflict with *Christian* to the extent it agreed with *Blacker*, and certified the question as one of great public importance. *Id.* at 490.

## ANALYSIS

This case concerns interpretation of the Youthful Offender Act. Questions of statutory interpretation are reviewed de novo. *See Borden v. East-European Ins.*

*Co.*, 921 So. 2d 587, 591 (Fla. 2006). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, . . . the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)).

The sentencing of a youthful offender upon revocation of probation or community control is governed by sections 958.14 and 948.06, Florida Statutes (2005). In section 958.14, part of the Act, the Legislature provides that a youthful offender who violates probation or community control is to be sentenced under section 948.06, a separate provision of general law applicable to adult CPC sentences. The Act then distinguishes between substantive violations and technical or nonsubstantive violations. As explained in *Christian*, Florida courts have consistently treated conduct involving a new criminal offense, such as Eustache's illegal drug possession, as a substantive violation. *Christian*, 84 So. 3d at 439-41.

Section 958.14 of the Act reads in full:

A violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06. However, no youthful offender shall be committed to the custody of the department for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty, with credit for time served while incarcerated, or for a technical or nonsubstantive violation for a period longer than 6 years or for a period longer than the maximum sentence for the offense for which he or she was found guilty, whichever is less, with credit for time served while incarcerated.

§ 958.14, Fla. Stat. (2005).  Section 958.14 clearly and unambiguously requires

sentencing within the six-year cap for youthful offenders who commit technical

probationary or community control violations and clearly and unambiguously

permits sentencing above the six-year cap upon revocation of a youthful offender's

probation or community control for a substantive violation.  Section 958.14 also

clearly and unambiguously directs that a violation of probation or community

control "shall subject the youthful offender to the provisions of s. 948.06."  *Id.*

Section 948.06(2)(b) provides,

> If probation or community control is revoked, the court shall adjudge
> the probationer or offender guilty of the offense charged and proven
> or admitted, unless he or she has previously been adjudged guilty, *and
> impose any sentence which it might have originally imposed before
> placing the probationer on probation or the offender into community
> control*.

§ 948.06(2)(b), Fla. Stat. (2005) (emphasis added).  This section clearly provides

for the imposition of "any sentence" that was "originally" available to the

sentencing judge.

Focusing on the plain language of section 948.06(2)(b), which applies to all

violations of probation proceedings—youthful offender and non-youthful offender

alike—the Fourth District held that after revoking a youthful offender's probation

or community control for a substantive violation, the sentencing court could only

sentence according to one of the two options it had at the original sentencing

proceeding: it could either (1) impose a sentence under the six-year sentencing cap

(with no minimum mandatory); or, alternatively, (2) impose an adult sanction (in which case it also would be required to impose any minimum mandatory provision(s) associated with the offense(s)). *Eustache*, 199 So. 3d at 487. We agree that this holding properly reflects a plain reading of this unambiguous statute, and that no additional analysis is warranted. *See Holly*, 450 So. 2d at 219.

In addition, we note that the Fourth District's holding (that a trial judge must impose any associated adult minimum mandatory sentence(s) on a youthful offender when exceeding the initial six-year statutory cap for substantive probationary violations) is arguably inconsistent with dicta from *State v. Arnette*, 604 So. 2d 482, 484 (Fla. 1992), stating that "youthful offenders maintain youthful offender status even when they violate a condition of [probation or] community control." Florida's district courts of appeal have generally read this language from *Arnette* to mean that even where a trial court imposes a prison sentence in excess of the six-year statutory cap after a substantive probation violation, the defendant retains his or her youthful offender "status" along with the other attendant benefits of youthful offender sentencing. *See, e.g.*, *Christian*, 84 So. 3d at 442; *Blacker*, 49 So. 3d at 788; *Gadson v. State*, 160 So. 3d 496, 496 (Fla. 2d DCA 2015); *Jacques v. State*, 95 So. 3d 419, 420-21 (Fla. 3d DCA 2012); *Hudson v. State*, 989 So. 2d 725, 726 (Fla. 1st DCA 2008). It was the *Arnette* majority's statement that a defendant always retains his or her "youthful offender status" after violating probation that led the panel in *Christian* to conclude that minimum mandatory

- 8 -

terms did not apply to any post-violation sentence. *Christian*, 84 So. 3d at 443.

Even the Fourth District, in this case, held that Eustache would retain his youthful

offender "status" for most purposes. *Eustache*, 199 So. 3d at 487. However, we

reject this portion of the Fourth District's analysis.

The sole issue in *Arnette* was whether a trial court could impose a sentence

in excess of the six-year cap after a defendant violated his or her youthful offender

probation. 604 So. 2d at 483. *Arnette* held that that the trial court was limited to

the youthful offender six-year cap, even after a probation violation. *Id.* That

holding was superseded by the enactment of chapter 90-208, section 19, at 1161,

Laws of Florida, which amended the Act (adding the language quoted above which

provides discretion to impose a CPC sentence—up to the maximum period of

incarceration provided by general law for the offense(s)—upon finding a

substantive violation of youthful offender probation). Because *Arnette* has been

superseded by statute as to the sole issue decided in that case, we see no need to

recede from *Arnette* in order to clarify that when a youthful offender commits a

substantive violation of probation and the trial court elects to impose a sentence in

excess of the six-year cap, the sentence necessarily becomes an adult CPC sentence

such that the defendant does *not* retain his or her "youthful offender status." We

disapprove of *Christian* to the extent that it holds otherwise.[3]

---

3. We also disapprove similar language in the following cases: *Yegge*, 186
So. 3d at 556 ("[T]he trial court must continue a youthful offender's status after a

As explained above, the trial judge imposed Eustache's current sentence after being incorrectly told by both the state and defense counsel that he had no discretion to impose a sentence below the ten-year minimum mandatory term, when the judge did have the discretion to reimpose a youthful offender sentence with no minimum mandatory. Because defendants generally must be sentenced by a court that is able to exercise its discretion and consider all of its options before imposing a sentence, *see Soanes v. State*, 31 So. 3d 914, 914-15 (Fla. 4th DCA 2010); *see also Munnerlyn v. State*, 795 So. 2d 171, 171 (Fla. 4th DCA 2001), this error warrants remand and resentencing.

---

substantive violation of probation or community control . . . ."); *Larkins v. State*, 159 So. 3d 386, 386 (Fla. 4th DCA 2015) (holding youthful offender status cannot be revoked even for committing a substantive probation violation); *Cooper v. State*, 235 So. 3d 1034, 1035-37 (Fla. 5th DCA 2018) (same); *Peterson v. State*, 176 So. 3d 1015, 1015 (Fla. 5th DCA 2015) (same); *Gadson*, 160 So. 3d at 496 (same); *St. Cyr v. State*, 106 So. 3d 487, 488-89 (Fla. 4th DCA 2013) (same); *Josey v. State*, 128 So. 3d 247, 248 (Fla. 2d DCA 2013) (same); *Lachenauer v. State*, 117 So. 3d 880, 880-81 (Fla. 4th DCA 2013) (same); *Mistretta v. State*, 99 So. 3d 561, 561-62 (Fla. 2d DCA 2012) (same); *Christian*, 84 So. 3d at 442 (same); *Tidwell v. State*, 74 So. 3d 503, 503 (Fla. 2d DCA 2011) (same); *Blacker*, 49 So. 3d at 788 (same); *Johnson v. State*, 41 So. 3d 1115, 1115 (Fla. 4th DCA 2010) (same); *Hudson*, 989 So. 2d at 726 (same); *Rogers v. State*, 972 So. 2d 1017, 1019-20 (Fla. 4th DCA 2008) (same); *see also Lewis v. State*, 159 So. 3d 288, 288 (Fla. 2d DCA 2015) (holding youthful offender status could not be revoked upon violation of probation for a substantive violation involving a new law offense); *Smith v. State*, 143 So. 3d 1023, 1024-25 (Fla. 4th DCA 2014) (same); *Williams v. State*, 110 So. 3d 39, 40 (Fla. 2d DCA 2013) (same); *Jacques*, 95 So. 3d at 420-21 (same); *Mosley v. State*, 77 So. 3d 877, 877 (Fla. 2d DCA 2012) (same); *Lee v. State*, 67 So. 3d 1199, 1202 (Fla. 2d DCA 2011) (same); *Gardner v. State*, 656 So. 2d 933, 937-38 (Fla. 1st DCA 1995) (same).

**CONCLUSION**

We answer the certified question in the affirmative, quash the decision below, and disapprove *Christian* and the decisions cited in footnote 3 to the extent that they are inconsistent with this opinion. We remand this case to the Fourth District with instructions to remand to the trial court for resentencing.

It is so ordered.

CANADY, C.J., and LEWIS, QUINCE, and POLSTON, JJ., concur.
PARIENTE, J., concurs in part and dissents in part with an opinion.
LABARGA, J., dissents.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring in part and dissenting in part.

I concur in the majority's determination that "Eustache is entitled to a new sentencing proceeding" because the trial court was under the mistaken impression that it could not reimpose a youthful offender sentence. Majority op. at 2. I dissent, however, from the majority's conclusion that, when a trial court elects to impose an adult sentence for a youthful offender's probation violation, it must also impose the statutory mandatory minimum punishment. Majority op. at 2.

Eustache was originally sentenced under the Youthful Offender Act to four years' imprisonment followed by two years' probation. Majority op. at 2-3; *see* § 958.04, Fla. Stat. (2017). After being on probation for more than one year and successfully completing all probation tasks and paying all probation costs,

- 11 -

Eustache violated his probation. Majority op. at 3. Upon resentencing, the trial court, under the mistaken impression that it could not reimpose a youthful offender sentence, sentenced Eustache to fifteen years' imprisonment with a ten-year mandatory minimum. *Id.*

Under the majority's interpretation, when Eustache is again resentenced the trial court will have only two options: it can sentence Eustache (1) as a youthful offender to a sentence of less than six years' imprisonment; or (2) to an adult sentence that necessarily includes a ten-year mandatory minimum term. Majority op. at 2, 4. Because an adult sentence imposed under the majority's interpretation of the statutes has to include a mandatory minimum term, the majority's result would also strip Eustache of his youthful offender status, causing him to lose all of the benefits of that designation, including entitlement to early release. Of course, this point becomes moot if the trial court elects to reimpose a youthful offender sentence. Majority op. at 2, 9.

However, a reading of the applicable statutes does not require the majority's result. In fact, concluding that the statute is ambiguous and construing it in favor of Eustache leads to a significantly different result. *See* § 775.021(1), Fla. Stat. (2017); *see also Crews v. State*, 183 So. 3d 329, 333 (Fla. 2015). Construing the statute favorable to Eustache, as the rule of lenity requires, affords the trial court the following options: it could sentence Eustache (1) as a youthful offender to a sentence of less than six years' imprisonment; (2) to a term of years, including a

ten-year mandatory minimum sentence; or (3) to any adult term of years sentence it determines is appropriate, without being required to impose a ten-year mandatory minimum sentence, allowing Eustache to maintain his youthful offender designation. This interpretation is also consistent with this Court's well-reasoned opinion in *State v. Arnette*, 604 So. 2d 482, 484 (Fla. 1992), holding that "youthful offenders maintain youthful offender status even when they violate a condition of [probation or] community control." Majority op. at 8 (quoting *Arnette*, 604 So. 2d at 484).

## I. Rule of Lenity

First, I disagree with the majority's conclusion that sections 958.14 and 948.06, Florida Statutes (2017), are unambiguous. Majority op. at 7-8. While differing interpretations of the same statute from district courts of appeal might not always prove that a statute is ambiguous, that conclusion is reinforced here by the contradictory district court decisions. *See* majority op. at 5. *Compare Christian v. State*, 84 So. 3d 437, 439-45 (Fla. 5th DCA 2012), *and Blacker v. State*, 49 So. 3d 785, 787 (Fla. 4th DCA 2010), *with Yegge v. State*, 186 So. 3d 553, 557-62 (Fla. 2d DCA 2015), *and Goldwire v. State*, 73 So. 3d 844, 846 (Fla. 4th DCA 2011).

Although the majority's interpretation of sections 958.14 and 948.06, Florida Statutes (2017), is not unreasonable, as the district court decisions indicate, there is another equally, if not more, reasonable interpretation. An alternate interpretation hinges on the phrase in the Youthful Offender Act stating that

- 13 -

penalties under the Act are imposed "[i]n lieu of other criminal penalties authorized by law." § 958.04(2), Fla. Stat. (2017). Arguably, minimum mandatory sentence enhancements are included in the phrase "other criminal penalties." *Mendez v. State,* 835 So. 2d 348, 349 (Fla. 4th DCA 2003).

As Judge Conner explained in *Eustache*, concurring in part and dissenting in part:

> I agree with Judge Davis's specially concurring opinion in *Yegge* that "the maximum sentence for the offense" under section 958.14 is not necessarily synonymous with "a defendant's maximum exposure in a criminal case." *Yegge v. State*, 186 So. 3d 553, 560-61 (Fla. 2d DCA 2015) (Davis, J., specially concurring). As Judge Davis observed, "[t]he *maximum sentence* for an offense is determined by the legislature via statute. But a defendant's *maximum exposure* is determined by the statutory maximum sentence combined with other specific factors as related to the particular defendant or the specific circumstances of the commission of the offense." *Id.* at 561 (emphases added). Thus, the meaning of "maximum sentence" in the context of sections 958.14 and 948.06 appears to be ambiguous.

199 So. 3d at 491 (Conner, J., concurring in part and dissenting in part). Indeed, this interpretation furthers the policy reasons expressed by the Legislature in punishing youthful offenders differently than adults. *See* § 958.021, Fla. Stat. (2017).

By contrast, the majority's preferred interpretation of the statute leads to a draconian result not specifically required anywhere in the statute. Where a statute is "susceptible of differing constructions" so that there are two different, reasonable interpretations of the statute, the rule of lenity, as expressed in section

- 14 -

775.021(1), applies. *Crews*, 183 So. 3d at 333 (quoting § 775.021(1), Fla. Stat. (2014)). It is a "requirement," not an option, to apply the rule of lenity. *Id.*

The rule of lenity provides that ambiguities in criminal statutes must be resolved in favor of the defendant. *See State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016). Regarding the rule of lenity, Judge Conner explained:

> The rule of lenity requires that "any ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." *State v. Byars*, 823 So. 2d 740, 742 (Fla. 2002); *see also Kasischke v. State*, 991 So. 2d 803, 814 (Fla. 2008). The Legislature has not clearly required the imposition of a minimum mandatory sentence for a youthful offender who substantively violates probation or community control. If the Legislature had intended the outcome espoused by the majority, it could have easily added language to section 958.14 stating that if a sentence above the cap provisions of section 958.04(2) is imposed, all sentencing enhancements and minimum mandatory provisions apply.

*Eustache*, 199 So. 3d at 491 (Conner, J., concurring in part and dissenting in part). The rule of lenity compels the opposite result than that reached by the majority— that trial courts have the discretion to impose a sentence above the youthful offender sentencing cap that does not also have a mandatory minimum requirement.

## II. *Arnette*

Further, because I would construe the statute in favor of youthful offenders, I would not find conflict with this Court's interpretation of the Youthful Offender Act in *Arnette*. In *Arnette*, this Court properly interpreted section 958.14 as

requiring the court to sentence the probation violator to a sentence that it could have originally imposed under the Act. *Arnette*, 604 So. 2d at 484. Contrary to the majority's assertions, the 1990 amendment to the Act that allowed sentencing above the six-year cap does not supersede the overriding principle of *Arnette*—that youthful offender status and all of its benefits should be maintained even after a substantive probation violation. *Id.*; *see* majority op. at 9.

The benefits conferred to youthful offenders by the statute are substantial. Among them are the opportunity to receive, upon successful participation in the youthful offender program, "a recommendation to the court, by the department, for a modification or early termination of probation, community control, or the sentence at any time prior to the scheduled expiration of such term." § 958.04(2)(d), Fla. Stat. (2017); Fla. Admin. Code R. 33-601.226(6). Additionally, youthful offenders enjoy participation in many different programs, including, "career and job training," "life and socialization skills training," and "a comprehensive transition and postrelease plan." § 958.12(1)-(2), Fla. Stat. (2017). Finally, youthful offenders can also "work at paid employment, participate in an education or a training program, or voluntarily serve in a public or nonprofit agency or a public service program in the community," while incarcerated. *Id.* § 958.09(1)(b).

The district courts of appeal also agree that *Arnette* was not superseded by statute, as evidenced by the majority's disapproval of the language in twenty-one

district court cases.  *See* majority op. at 9-10, note 3.  Indeed, as then-Judge

Lawson reasoned in *Christian*:

> In *Goldwire v. State*, 73 So. 3d 844 (Fla. 4th DCA 2011), another Fourth District panel appears to have mislabeled a youthful offender sentence above the six-year cap (as now authorized by the Youthful Offender Act itself following a substantive violation of probation) as a "non-youthful offender sentence." *Id.* at 846.  This mislabeling caused the panel to conclude (erroneously, in our view) that the trial court had the discretion to avoid other sentencing features applicable to a youthful offender sentence, and impose a firearm minimum mandatory following a substantive violation of probation. *Id.*  We do not believe that *Arnette* permits this result.  *See Arnette*, 604 So. 2d at 484 ("youthful offenders maintain youthful offender status even when they violate a condition of community control"). Although the legislature amended the version of Youthful Offender Act at issue in *Arnette* to authorize a youthful offender sentence above the six-year cap following a substantive violation of probation, the statute has not been amended to authorize imposition of a non-youthful offender sentence following a substantive violation.  Nor has the statute been amended to authorize variation from any other feature of a youthful offender sentence following a substantive violation of probation.

*Christian*, 84 So. 3d at 444 n.7.

However, the majority's limiting interpretation of the statute necessarily

requires it to abandon the core principle of *Arnette* and disapprove of the district

court cases that have relied on *Arnette*.  The majority acknowledges the

inconsistency of its decision with our jurisprudence, stating, "we note that [this

opinion] is arguably inconsistent with dicta from *State v. Arnette*, 604 So. 2d 482,

484 (Fla. 1992)," and the "district courts of appeal have generally read this

language from *Arnette* to mean that even where a trial court imposes a prison

sentence in excess of the six-year statutory cap after a substantive probation violation, the defendant retains his or her youthful offender 'status' along with the other attendant benefits of youthful offender sentencing." Majority op. at 8.

Rather than receding from long-standing precedent for the sole purpose of denying youthful offenders additional legal protections deemed appropriate by the Legislature, this Court should read the statute to preserve the benefits granted to youthful offenders by the Legislature. As the Legislature stated:

> The purpose of this chapter is to improve the chances of correction and successful return to the community of youthful offenders sentenced to imprisonment by providing them with enhanced vocational, educational, counseling, or public service opportunities and by preventing their association with older and more experienced criminals during the terms of their confinement. It is the further purpose of this chapter to encourage citizen volunteers from the community to contribute time, skills, and maturity toward helping youthful offenders successfully reintegrate into the community and to require youthful offenders to participate in substance abuse and other types of counseling and programs at each youthful offender institution.

§ 958.021, Fla. Stat. (2017). There is no reasonable basis for this Court to discard the intent of the Legislature and abandon our holding in *Arnette*.

## CONCLUSION

Because the statute is subject to multiple reasonable interpretations, I would apply the rule of lenity in favor of the youthful offenders in this state. I would further decline the invitation to recede from the principles espoused in *Arnette*.

- 18 -

Accordingly, although I concur in part as to the majority's holding that Eustache is entitled to resentencing, I dissent as to the majority's interpretation of the statute.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case No. 4D15-2596

(Palm Beach County)

Peter D. Webster, David L. Luck, and Jorge A. Perez-Santiago of Carlton Fields Jorden Burt, P.A., Miami, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Celia A. Terenzio, Bureau Chief, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, Florida,

for Respondent