PARIENTE, J., concurring in part and dissenting in part.
I concur in the majority's determination that "Eustache is entitled to a new sentencing *1103 proceeding" because the trial court was under the mistaken impression that it could not reimpose a youthful offender sentence. Majority op. at 1098-99. I dissent, however, from the majority's conclusion that, when a trial court elects to impose an adult sentence for a youthful offender's probation violation, it must also impose the statutory mandatory minimum punishment. Majority op. at 1098-99.
Eustache was originally sentenced under the Youthful Offender Act to four years' imprisonment followed by two years' probation. Majority op. at 1098-99; see § 958.04, Fla. Stat. (2017). After being on probation for more than one year and successfully completing all probation tasks and paying all probation costs, Eustache violated his probation. Majority op. at 1099. Upon resentencing, the trial court, under the mistaken impression that it could not reimpose a youthful offender sentence, sentenced Eustache to fifteen years' imprisonment with a ten-year mandatory minimum. Id.
Under the majority's interpretation, when Eustache is again resentenced the trial court will have only two options: it can sentence Eustache (1) as a youthful offender to a sentence of less than six years' imprisonment; or (2) to an adult sentence that necessarily includes a ten-year mandatory minimum term. Majority op. at 1098-99, 1099-1100. Because an adult sentence imposed under the majority's interpretation of the statutes has to include a mandatory minimum term, the majority's result would also strip Eustache of his youthful offender status, causing him to lose all of the benefits of that designation, including entitlement to early release. Of course, this point becomes moot if the trial court elects to reimpose a youthful offender sentence. Majority op. at 1098-99, 1101-02.
However, a reading of the applicable statutes does not require the majority's result. In fact, concluding that the statute is ambiguous and construing it in favor of Eustache leads to a significantly different result. See § 775.021(1), Fla. Stat. (2017) ; see also Crews v. State , 183 So.3d 329, 333 (Fla. 2015). Construing the statute favorable to Eustache, as the rule of lenity requires, affords the trial court the following options: it could sentence Eustache (1) as a youthful offender to a sentence of less than six years' imprisonment; (2) to a term of years, including a ten-year mandatory minimum sentence; or (3) to any adult term of years sentence it determines is appropriate, without being required to impose a ten-year mandatory minimum sentence, allowing Eustache to maintain his youthful offender designation. This interpretation is also consistent with this Court's well-reasoned opinion in State v. Arnette , 604 So.2d 482, 484 (Fla. 1992), holding that "youthful offenders maintain youthful offender status even when they violate a condition of [probation or] community control." Majority op. at 1101 (quoting Arnette , 604 So.2d at 484 ).
I. Rule of Lenity
First, I disagree with the majority's conclusion that sections 958.14 and 948.06, Florida Statutes (2017), are unambiguous. Majority op. at 1100-01. While differing interpretations of the same statute from district courts of appeal might not always prove that a statute is ambiguous, that conclusion is reinforced here by the contradictory district court decisions. See majority op. at 1100. Compare Christian v. State , 84 So.3d 437, 439-45 (Fla. 5th DCA 2012), and Blacker v. State , 49 So.3d 785, 787 (Fla. 4th DCA 2010), with Yegge v. State , 186 So.3d 553, 557-62 (Fla. 2d DCA 2015), and Goldwire v. State , 73 So.3d 844, 846 (Fla. 4th DCA 2011).
Although the majority's interpretation of sections 958.14 and 948.06, Florida Statutes (2017), is not unreasonable, as the district court decisions indicate, there is *1104 another equally, if not more, reasonable interpretation. An alternate interpretation hinges on the phrase in the Youthful Offender Act stating that penalties under the Act are imposed "[i]n lieu of other criminal penalties authorized by law." § 958.04(2), Fla. Stat. (2017). Arguably, minimum mandatory sentence enhancements are included in the phrase "other criminal penalties." Mendez v. State, 835 So.2d 348, 349 (Fla. 4th DCA 2003).
As Judge Conner explained in Eustache , concurring in part and dissenting in part:
I agree with Judge Davis's specially concurring opinion in Yegge that "the maximum sentence for the offense" under section 958.14 is not necessarily synonymous with "a defendant's maximum exposure in a criminal case." Yegge v. State , 186 So.3d 553, 560-61 (Fla. 2d DCA 2015) (Davis, J., specially concurring). As Judge Davis observed, "[t]he maximum sentence for an offense is determined by the legislature via statute. But a defendant's maximum exposure is determined by the statutory maximum sentence combined with other specific factors as related to the particular defendant or the specific circumstances of the commission of the offense." Id. at 561 (emphases added). Thus, the meaning of "maximum sentence" in the context of sections 958.14 and 948.06 appears to be ambiguous.
199 So.3d at 491 (Conner, J., concurring in part and dissenting in part). Indeed, this interpretation furthers the policy reasons expressed by the Legislature in punishing youthful offenders differently than adults. See § 958.021, Fla. Stat. (2017).
By contrast, the majority's preferred interpretation of the statute leads to a draconian result not specifically required anywhere in the statute. Where a statute is "susceptible of differing constructions" so that there are two different, reasonable interpretations of the statute, the rule of lenity, as expressed in section 775.021(1), applies. Crews , 183 So.3d at 333 (quoting § 775.021(1), Fla. Stat. (2014) ). It is a "requirement," not an option, to apply the rule of lenity. Id.
The rule of lenity provides that ambiguities in criminal statutes must be resolved in favor of the defendant. See State v. Weeks , 202 So.3d 1, 8 (Fla. 2016). Regarding the rule of lenity, Judge Conner explained:
The rule of lenity requires that "any ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." State v. Byars , 823 So.2d 740, 742 (Fla. 2002) ; see also Kasischke v. State , 991 So.2d 803, 814 (Fla. 2008). The Legislature has not clearly required the imposition of a minimum mandatory sentence for a youthful offender who substantively violates probation or community control. If the Legislature had intended the outcome espoused by the majority, it could have easily added language to section 958.14 stating that if a sentence above the cap provisions of section 958.04(2) is imposed, all sentencing enhancements and minimum mandatory provisions apply.
Eustache , 199 So.3d at 491 (Conner, J., concurring in part and dissenting in part). The rule of lenity compels the opposite result than that reached by the majority-that trial courts have the discretion to impose a sentence above the youthful offender sentencing cap that does not also have a mandatory minimum requirement.
II. Arnette
Further, because I would construe the statute in favor of youthful offenders, I would not find conflict with this Court's interpretation of the Youthful Offender Act in Arnette . In Arnette , this Court *1105 properly interpreted section 958.14 as requiring the court to sentence the probation violator to a sentence that it could have originally imposed under the Act. Arnette , 604 So.2d at 484. Contrary to the majority's assertions, the 1990 amendment to the Act that allowed sentencing above the six-year cap does not supersede the overriding principle of Arnette -that youthful offender status and all of its benefits should be maintained even after a substantive probation violation. Id. ; see majority op. at 1101-02.
The benefits conferred to youthful offenders by the statute are substantial. Among them are the opportunity to receive, upon successful participation in the youthful offender program, "a recommendation to the court, by the department, for a modification or early termination of probation, community control, or the sentence at any time prior to the scheduled expiration of such term." § 958.04(2)(d), Fla. Stat. (2017) ; Fla. Admin. Code R. 33-601.226(6). Additionally, youthful offenders enjoy participation in many different programs, including, "career and job training," "life and socialization skills training," and "a comprehensive transition and postrelease plan." § 958.12(1) - (2), Fla. Stat. (2017). Finally, youthful offenders can also "work at paid employment, participate in an education or a training program, or voluntarily serve in a public or nonprofit agency or a public service program in the community," while incarcerated. Id. § 958.09(1)(b).
The district courts of appeal also agree that Arnette was not superseded by statute, as evidenced by the majority's disapproval of the language in twenty-one district court cases. See majority op. at 1102, note 3. Indeed, as then-Judge Lawson reasoned in Christian :
In Goldwire v. State , 73 So.3d 844 (Fla. 4th DCA 2011), another Fourth District panel appears to have mislabeled a youthful offender sentence above the six-year cap (as now authorized by the Youthful Offender Act itself following a substantive violation of probation) as a "non-youthful offender sentence." Id. at 846. This mislabeling caused the panel to conclude (erroneously, in our view) that the trial court had the discretion to avoid other sentencing features applicable to a youthful offender sentence, and impose a firearm minimum mandatory following a substantive violation of probation. Id. We do not believe that Arnette permits this result. See Arnette , 604 So.2d at 484 ("youthful offenders maintain youthful offender status even when they violate a condition of community control"). Although the legislature amended the version of Youthful Offender Act at issue in Arnette to authorize a youthful offender sentence above the six-year cap following a substantive violation of probation, the statute has not been amended to authorize imposition of a non-youthful offender sentence following a substantive violation. Nor has the statute been amended to authorize variation from any other feature of a youthful offender sentence following a substantive violation of probation.
Christian , 84 So.3d at 444 n.7.
However, the majority's limiting interpretation of the statute necessarily requires it to abandon the core principle of Arnette and disapprove of the district court cases that have relied on Arnette . The majority acknowledges the inconsistency of its decision with our jurisprudence, stating, "we note that [this opinion] is arguably inconsistent with dicta from State v. Arnette , 604 So.2d 482, 484 (Fla. 1992)," and the "district courts of appeal have generally read this language from Arnette to mean that even where a trial court imposes a prison sentence in excess of the six-year statutory cap after a substantive probation violation, the defendant retains his or her youthful offender 'status'
*1106 along with the other attendant benefits of youthful offender sentencing." Majority op. at 1101.
Rather than receding from long-standing precedent for the sole purpose of denying youthful offenders additional legal protections deemed appropriate by the Legislature, this Court should read the statute to preserve the benefits granted to youthful offenders by the Legislature. As the Legislature stated:
The purpose of this chapter is to improve the chances of correction and successful return to the community of youthful offenders sentenced to imprisonment by providing them with enhanced vocational, educational, counseling, or public service opportunities and by preventing their association with older and more experienced criminals during the terms of their confinement. It is the further purpose of this chapter to encourage citizen volunteers from the community to contribute time, skills, and maturity toward helping youthful offenders successfully reintegrate into the community and to require youthful offenders to participate in substance abuse and other types of counseling and programs at each youthful offender institution.
§ 958.021, Fla. Stat. (2017). There is no reasonable basis for this Court to discard the intent of the Legislature and abandon our holding in Arnette .
CONCLUSION
Because the statute is subject to multiple reasonable interpretations, I would apply the rule of lenity in favor of the youthful offenders in this state. I would further decline the invitation to recede from the principles espoused in Arnette . Accordingly, although I concur in part as to the majority's holding that Eustache is entitled to resentencing, I dissent as to the majority's interpretation of the statute.